THOMAS P. DUGAS *v.* LUMBERMENS MUTUAL CASUALTY COMPANY (7924)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued December 5, 1989—decision released June 12, 1990

*Michael Brodinsky,* for the appellant (defendant).

*Juri E. Taalman,* with whom, on the brief, was *Nicholas G. Sarantopoulos,* for the appellee (plaintiff).

LAVERY, J. The sole issue in this appeal is whether an insurance carrier providing uninsured motorist coverage may deduct from those proceeds payable to its insured the full amount of any unreimbursed reparations payments[1] without contributing to its insured's expenses, namely, attorney's fees, in procuring the uninsured motorist recovery. The trial court rendered judgment requiring the defendant insurance carrier to contribute to those expenses in an amount proportionately equal to the plaintiff's contribution. We affirm.

The case was tried upon the following stipulated facts. The plaintiff was injured in a two car accident on April 17, 1982. At that time, the automobile driven by the plaintiff was covered by a policy with the defendant that provided reparations coverage of $25,000 and

---

[1] General Statutes § 38-319 (k) defines basic reparations benefits as "benefits reimbursing persons suffering economic loss through injury arising out of the ownership, maintenance or use of a private passenger motor vehicle . . . ." For the purposes of our analysis there is no difference between "basic" reparations and "added" reparations benefits; see footnote 7, infra; and we therefore refer in the opinion simply to reparations benefits without distinguishing between "basic" and "added" reparations.

uninsured motorist coverage of $40,000. The defendant paid to the plaintiff or on his behalf reparations totalling $13,316.63. The stipulated amount of the plaintiff's damages under the uninsured motorist coverage was $20,000,[2] and the parties agreed that the defendant would be reimbursed for its reparations benefits payments out of this $20,000.

The parties disagree, however, over whether the defendant is entitled to reimbursement of the full amount of its reparations payments. The defendant claims that, pursuant to the Connecticut insurance regulations, it is entitled to full reimbursement. The plaintiff, on the other hand, contends that the defendant's reimbursement is limited to two thirds of the amount of the reparations payments.[3] The trial court found for the plaintiff, and the defendant appealed.

To decide this appeal, we must consider the relationship among several statutes and regulations pertaining to no-fault insurance. These are General Statutes

[2] The plaintiff sued the negligent tortfeasor and settled with his carrier for $20,000, the tortfeasor's policy limit for liability. The plaintiff received the $20,000, paid his attorney and kept the rest, even though his own no-fault carrier was entitled to reimbursement of its reparations payments out of the plaintiff's tort recovery. General Statutes § 38-325 (b). Thus, the reimbursement issue survived into the uninsured motorist proceedings, with the parties agreeing that the carrier was entitled to reimbursement but disagreeing over the amount. Further, the parties agreed that pursuant to § 38-175a-6 (d) (1) of the Regulations of Connecticut State Agencies, the uninsured motorist coverage limits should be reduced by the amount that the insured recovered from the tortfeasor, namely, $20,000, which left $20,000 of uninsured motorist coverage available. It is this balance that is at issue.

[3] The parties first presented this issue to an arbitrator, pursuant to a mandatory arbitration clause in the policy. The decision of the arbitrator was appealed, first to the Superior Court and then to this court. See *Dugas* v. *Lumbermens Mutual Casualty Co.,* 14 Conn. App. 153, 540 A.2d 89 (1988), for further factual background of these proceedings. This court remanded the case to the trial court for a de novo review of the arbitrator's interpretation and application of the law.

§§ 38-325 (b),[4] 38-175c,[5] and Regulations of Connecti-
cut State Agencies § 38-175a-6.[6]

The parties agree that General Statutes § 38-325 (b)
governs the reimbursement to the insurer of repara-

[4] General Statutes § 38-325 (b) provides: "Whenever a person who
receives basic reparations benefits for an injury recovers damages, either
by judgment or settlement, from the owner, registrant, operator or occupant
of a private passenger motor vehicle with respect to which security has
been provided under this chapter or from a person or organization legally
responsible for his acts or omissions, the insurer is entitled to reimburse-
ment from the claimant to the extent that said basic reparations benefits
have been paid, minus an amount which represents the insurer's contribu-
tion toward attorney's fees for the collection of basic reparations benefits.
Such amount shall be computed by multiplying the total amount of such
reasonable attorney's fees and costs, by a fraction, the numerator of which
shall be the amount of basic reparations benefits received by the claimant
and the denominator shall be the amount of damages recovered by the claim-
ant, less court costs. In no event shall such amount exceed one-third the
amount of the basic reparations benefits to be reimbursed to the insurer.
The insurer shall have a lien on the claimant's recovery for the amount
to which he is entitled for such reimbursement; provided no such lien shall
attach until such time as the proceeds of such recovery are in the posses-
sion and control of such claimant."

[5] General Statutes § 38-175c provides in pertinent part: "(a) (1) Every
such policy shall provide insurance, herein called uninsured motorist cover-
age, in accordance with such regulations, with limits for bodily injury or
death not less than those specified in subsection (a) of section 14-112, for
the protection of persons insured thereunder who are legally entitled to
recover damages from owners or operators of uninsured motor vehicles
and underinsured motor vehicles and insured motor vehicles, the insurer
of which becomes insolvent prior to payment of such damages, because of
bodily injury, including death resulting therefrom, provided each insurer
licensed to write automobile liability insurance in this state shall provide
such uninsured motorist coverage with limits requested by the named
insured upon payment of the appropriate premium, but such insurer shall
not be required to provide such coverage with limits in excess of the limits
of the bodily injury coverage of such policy issued to such named
insured. . . . Every such policy issued on or after October 1, 1971, which
contains a provision for binding arbitration shall include a provision for
final determination of insurance coverage in such arbitration proceedings."

[6] Section 38-175a-6 of the Regulations of Connecticut State Agencies pro-
vides in pertinent part: "(b) ARBITRATION. The insurance may provide but
not require that the issues of liability as between the insured and the unin-

tions benefits out of damage recoveries from tort-feasors or their liability carriers. The trial court apparently held, however, as the plaintiff urges us to hold, that § 38-325 (b) also governs the reimbursement to the insurer of reparations benefits out of uninsured motorist damage awards. It is true, as the plaintiff contends, that the reparations benefits being reimbursed to the insurer are the same in the case of a recovery from either a tortfeasor or an uninsured motorist carrier. That the reparations payments being reimbursed are the same in either case, however, does not necessarily mean that the statute applies with equal force in either instance.

The relevant portion of § 38-325 (b) provides: "Whenever a person who receives basic reparations benefits for an injury recovers damages . . . from the owner, registrant, operator or occupant of [an insured] private passenger motor vehicle . . . or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant . . . ." It is evident, therefore, that three factors must be satisfied before the provisions of this section become applicable. First, the claimant must

---

sured motorist, and the amount of damages, be arbitrated. The insurer may provide against being bound by any judgment against the uninsured motorist. . . .

"(d) LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workers' compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."

receive reparations benefits.[7] Second, the claimant must recover damages either through judgment or settlement. In the case before us, these two factors are satisfied. Lastly, the damages must be received from an individual or organization specified in the statute. On this factor the plaintiff's argument fails. Uninsured motorist carriers are not specified in the statute, as they are not considered to be the tortfeasor or any other statutorily specified person; neither is the claimant's uninsured motorist carrier considered to be in privity with the tortfeasor or with any of the persons specified in the statute. *Jones* v. *Southern Home Ins. Co.,* 135 Ga. App. 385, 217 S.E.2d 620, cert. denied, 424 U.S. 902, 96 S. Ct. 1093, 47 L. Ed. 2d 307 (1975); 8C J. Appleman, Insurance Law and Practice § 5071, p. 83. Thus, § 38-325 (b) is not directly applicable to the situation before us.

The defendant, on the other hand, argues that the applicable authority is § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies, which provides that any uninsured motorist damages the insured may recover may be reduced by the amount of any unreimbursed reparations payments. In contrast to General Statutes § 38-325 (b), the regulation makes no provision for reducing the carrier's reduction as a contribution toward the claimant's attorney's fees to reflect the claimant's cost of procuring the benefit for the carrier. We agree with the defendant that this regulation controls the case.

It does not necessarily follow, however, that the trial court's judgment allowing a setoff for attorney's fees is erroneous and must be reversed. It is not clear

---

[7] In *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 489 A.2d 398 (1985), aff'd, 200 Conn. 630, 513 A.2d 52 (1986), this court held that, for the purposes of General Statutes § 38-325 (b), the statutory reference to "basic reparations" means all reparations benefits, both basic and added.

whether the trial court considered the relationship of the regulation and the statute or the apparent conflict between them. Its memorandum of decision simply states that the court considered § 38-325 (b) and various cases. Even if the trial court failed to give adequate consideration to these issues, however, we may uphold a correct decision rendered below when the decision is rendered upon incorrect grounds, provided proper grounds may be found in the record to sustain it. *Stamford* v. *Administrator,* 15 Conn. App. 738, 743, 546 A.2d 335, cert. denied, 209 Conn. 814, 550 A.2d 1082 (1988). We uphold the trial court's judgment because we hold, for the reasons set out below, that the regulation cannot be read to be valid without reference to the attorney's fee provision of § 38-325 (b).

Our review of General Statutes § 38-325 (b) and the Regulations of Connecticut State Agencies § 38-175a-6 indicates that, although the statute seems facially inapplicable to this case, the public policy implicated by the statute cannot be wholly dismissed from our consideration of the regulation. The two are closely related; both the statute and the regulation govern the direct reimbursement to the insurer of reparations benefits paid to the insured, albeit from differing sources of recovery. Yet the two conflict on the insured's ability to recoup part of the cost of collecting the funds reimbursed to the insurer.

"Although it is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary; *Manchester* v. *Manchester Police Union,* 3 Conn. App. 1, 6, 484 A.2d 455 (1984); that axiom only applies in full force '[w]here . . . the language of a statute is . . . *absolutely* clear' on its face and where no ambiguity is disclosed by reference to its background. (Emphasis in original.) *Anderson* v. *Ludgin,* 175 Conn. 545, 552–54, 400 A.2d 712 (1978). Where

such absolute clarity is lacking and such an ambiguity is disclosed, the court must look to the language of the statute, its history, purpose, objective and underlying policy. Id." *Shelby Mututal Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 437–38, 489 A.2d 398 (1985), aff'd, 200 Conn. 630, 513 A.2d 52 (1986). We therefore examine the statute and the regulation to see if the apparent conflict between them can be resolved without resort to judicial construction.

We turn first to the statute, § 38-325 (b). Originally enacted as Public Acts 1972, No. 273, § 7, it gave insurers the right to require insureds who receive reparations benefits and recover tort damages to reimburse the insurer for the reparations benefits paid. The act did not require insurers to make any contribution toward the expenses that the insured bore in procuring the damage award. The act served a principal goal of the no-fault laws, namely, to limit the insured to a single net recovery, thereby reducing the cost of insuring the motoring public and easing the upward pressure on insurance premium rates. See *Hartford Accident & Indemnity Co.* v. *Holder,* 37 Conn. Sup. 723, 731–32, 436 A.2d 308 (1981), citing *Gentile* v. *Altermatt,* 169 Conn. 267, 290–92, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976).[8]

In 1980, the legislature, growing increasingly aware that § 38-325 (b) placed an unfair burden on insureds and granted insurers a windfall; see generally 23 S. Proc., Pt. 4, 1980 Sess., pp. 1266–1273 (remarks of Sens. James J. Murphy and Louise S. Barry); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1980 Sess., pp. 341–345 and 417–420 (remarks of Sen.

---

[8] The court in *Hartford Accident & Indemnity Co.* v. *Holder,* 37 Conn. Sup. 723, 732, 436 A.2d 308 (1981), also noted that the implicit requirement of General Statutes § 38-325 (b) that the claimant bear the full brunt of the attorney's fees provided a disincentive to sue in cases involving minor damages.

Salvatore De Piano); amended the statute to require insurers to make a pro rata contribution toward the expenses borne by the insured in procuring the recovery. Henceforth, it was to be "part of our system," in Senator Murphy's words, "that if an insured or a member of the public is to make payments and bring upon him or herself to incur costs in order to effect a recovery . . . an insurance company which benefits from effecting this recovery, should participate in the expenses of the same percentage that it effects a recovery for itself." 23 S. Proc., Pt. 4, supra, 1270. Section 38-325 (b), as amended, thus incorporates two basic principles of fairness and public policy: first, that insureds be limited to a single recovery; and, second, that the cost of recouping the insurer's reparations benefits payments should not be borne solely by the insured.

Both of these principles again found expression the following year in Public Acts 1981, No. 81-386, § 1, a new statute granting health insurers a lien on the proceeds of any workers' compensation award won by a claimant who had received benefits from the health insurer to cover the same injury. General Statutes § 38-174n (b). The lien is for the amount of benefits paid, "less attorneys' fees approved by the district commissioner and reasonable costs related to the proceeding." Id. Similiarly, General Statutes § 31-293 (a) provides that when an injured worker and her employer jointly bring an action against a third party tortfeasor and recover damages, the employer's claim for paid benefits takes precedence, "after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery."

These other examples illustrate that the public policies embodied in General Statutes § 38-325 (b) are strong and broad based, running beneath not only that

statute, but beneath provisions of the workers' compensation statutes as well. These policies, therefore, warrant serious consideration in our review of the uninsured motorist regulation, § 38-175a-6, to which we next turn our attention.

The uninsured motorist insurance statute, § 38-175c, in fact made no provision for any reduction of the limits or the damages paid under the policy. General Statutes § 38-175a, however, authorized the insurance commissioner to adopt regulations "relat[ing] to . . . exclusions, conditions and other terms applicable to . . . uninsured motorists coverages." Section 38-175c was enacted in 1967, five years prior to the enactment of the no-fault statutes. The original uninsured motorist insurance regulations, effective in 1968, therefore, made no mention of reparations on their reimbursement. The no-fault statutes were passed in 1972, and included provisions for, inter alia, mandatory reparations coverage; General Statutes § 38-327; and made reparations payments reimbursable out of any damage award won by the insured. General Statutes § 38-325 (b). They also incorporated and made mandatory the uninsured motorist coverage provided for in § 38-175c. General Statutes §§ 38-326 and 38-327.[9] In 1975, the uninsured motorist insurance regulation was amended to make reparations payments reimbursable from uninsured motorist damage awards as well. The regulation, thus, was at this point a clear reflection of the policy incorporated in § 38-325 (b), its provisions borrowed by analogy from that statute.

___

[9] General Statutes § 38-327 (a) (1) requires motorists to maintain "security in accordance with this chapter for payment of basic reparations benefits and the liabilities covered under residual liability insurance . . . ." Section 38-326 (b) provides that "[r]esidual liability insurance shall afford coverage which satisfies the requirements of sections 38-175a to 38-175h, inclusive." The uninsured motorist insurance statute is § 38-175c.

As we have seen, § 38-325 (b) was amended in 1980 to provide the pro rata attorney's fee setoff against reparations reimbursements to insurers. This amendment was not reflected, however, in the second revision of the regulations, effective June 1, 1986, despite the relationship by close analogy between the statutory provision and the regulation. This analogy is reinforced, moreover, by the fact that the determination of whether the insured is entitled to uninsured motorist damages is made through arbitration, an adversarial proceeding that usually requires the insured to retain the assistance of counsel.[10]

Our reading of the statute and the regulation leads us to conclude that, given the close, albeit indirect, relation between the two and the strong public policy emanating from the statute, the regulation cannot be read without reference to the statutory provisions. The conflict between the regulation and the statute is genuine and unavoidable on the question of whether to allow the claimant a setoff for the expenses incurred in reimbursing reparations benefits to the insurer. The regulation is, therefore, deprived of absolute clarity and necessitates our further analysis. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* supra, 437–38.

No Connecticut court has previously addressed this issue, and we proceed, mindful of the following precepts. When construing administrative regulations,

---

[10] In such an arbitration, the insured is litigating against his own carrier. This distinguishes the uninsured motorist proceeding from a traditional civil action against a tortfeasor, but does not disturb the analysis or the analogy, because, first, in either instance the insured is expending funds to gain a recovery from which the carrier will benefit, and, second, the carrier is expending funds in the uninsured motorist arbitration not to create the recovery, but to avoid it. "Since it is the denial by the insurer of the right of the insured to recover the damages he seeks which compels the proceedings against it . . . by arbitration . . . it does not seem unreasonable for attorney's fees to be included on part of the costs" credited to the insured. 8D J. Appleman, Insurance Law and Practice § 5141, p. 280. *Kaplan* v. *Phoenix of Hartford Ins. Co.,* 215 So. 2d 893 (Fla. App. 1968), cert. denied, 220 So. 2d 365 (1969).

we follow the same canons of construction that govern our reading of statutes. See *Citerella* v. *United Illuminating Co.,* 158 Conn. 600, 608–609, 266 A.2d 382 (1969). When construing statutes, this court "often defers to the judgment of administrative agencies that are in charge of enforcing such statutes . . . . *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 173–74, 479 A.2d 1191 (1984) . . . . ." (Citation omitted.) *Nichols* v. *Warren,* 209 Conn. 191, 202–203, 550 A.2d 309 (1988). "However, ' "the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." ' " *Nichols* v. *Warren,* supra, 203.

" 'The power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the legislature as expressed by the statute.' *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 363, 417 A.2d 358 (1979)." *Breen* v. *Department of Liquor Control,* 2 Conn. App. 628, 635, 481 A.2d 755, cert. granted, 194 Conn. 808, 483 A.2d 1098 (1984) (remanded on motion by Supreme Court without opinion), vacated as moot on remand, 5 Conn. App. 432, 499 A.2d 432 (1985). "[N]o administrative or regulatory body can modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statute specifically grants it that power. *Lundy Electronics & Systems, Inc.* v. *Tax Commissioner,* 189 Conn. 690, 695, 458 A.2d 387 (1983) . . . ." *Breen* v. *Department of Liquor Control,* supra, 634. Because of the interlocking nature of our automobile insurance laws, they cannot be read or considered individually in a vacuum without reference to other relevant provisions, but must be considered within the context of the whole body of automobile insurance law in this state.

General Statutes § 38-325 (b) established the will of the legislature with regard to the reimbursement of reparations benefits payments to insurers. Nothing in § 38-175a authorized the commissioner to adopt regulations at variance with other provisions of the automobile insurance statutes. Because § 38-175a-6 (d) (3) of the regulations does not provide for an attorney's fee setoff similar to that found in General Statutes § 38-325 (b), the regulation effectively fails in this respect to " 'carry into effect the will of the legislature as expressed by the statute' "; *Breen* v. *Department of Liquor Control,* supra, 635; and thus must be viewed as exceeding the commissioner's statutory authority. To avoid the conclusion that the regulation is void, we will read it to incorporate by reference the attorney's fees provision of General Statutes § 38-325 (b).

It is our conclusion, therefore, that, as a matter of law, the provision of General Statutes § 38-325 (b) making allowance for a contribution by the insurer toward the insured's costs of gaining a damage recovery from which the insurer reimburses itself for reparations benefits paid must control, and be incorporated by reference into § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies. Otherwise, that portion of the regulation would be void as an exercise of regulatory authority beyond the commissioner's statutory mandate. *Citrano* v. *Berkshire Mutual Ins. Co.,* 171 Conn. 248, 255, 368 A.2d 54 (1976).

The judgment is affirmed.

In this opinion the other judges concurred.