THOMAS P. DUGAS *v.* LUMBERMENS MUTUAL
CASUALTY COMPANY
(14016)

PETERS, C. J., CALLAHAN, COVELLO, HULL and BORDEN, Js.

632

Argued December 6, 1990—decision released March 5, 1991

*Michael Brodinsky,* with whom, on the brief, was *Andrew V. O'Shea,* for the appellant (defendant).

*Juri E. Taalman,* with whom was *Nicholas G. Sarantopoulos,* for the appellee (plaintiff).

CALLAHAN, J. The principal issue in this appeal is whether, in calculating the amount due an insured from uninsured motorist coverage, the insurer may deduct the entire amount of reparations benefits previously paid to the insured, or whether the deduction for previously paid reparations benefits must be reduced to reflect the insurer's contribution to attorney's fees incurred by the insured in effecting a recovery from the tortfeasor. The trial court concluded that the carrier was required to contribute to the insured's legal fees. The Appellate Court affirmed the trial court's judgment. We now reverse.

The parties stipulated to the following facts. On April 17, 1982, the plaintiff, Thomas P. Dugas, was injured in an accident involving two automobiles. The automobile driven by the plaintiff was insured under a policy issued by the defendant, Lumbermens Mutual Casualty Company. That policy provided uninsured motorist coverage in the amount of $40,000, basic reparations benefits in the required amount of $5000 and added reparations benefits in the amount of $20,000. The total of reparations benefits paid to the plaintiff by the defendant was $13,316.63. The plaintiff, with the assistance of his attorney, recovered $20,000 from the tortfeasor's insurer. The amount recovered was the limit of the tortfeasor's liability insurance policy.

The parties stipulated that the plaintiff's damages were at least $40,000. It was agreed, therefore, that the amount due the plaintiff under the uninsured motorist coverage of his policy was $20,000.[1] It was also stip-

---

[1] This amount represents the $40,000 of uninsured motorist coverage, reduced by the $20,000 recovery from the tortfeasor as required by § 38-175a-6 (d) (1) of the Regulations of Connecticut State Agencies. It is not disputed that the defendant could have sought reimbursement of the reparations benefits from the $20,000 tort recovery under General Statutes § 38-325 (b), but it did not do so. It is also clear that had the defendant sought reimbursement pursuant to § 38-325 (b), it would have recovered

ulated that the defendant was entitled to be reimbursed from that amount for the reparations benefits it had previously paid to the plaintiff. The parties disagreed, however, over the amount of the reimbursement. The defendant claimed that it was entitled to recover the entire $13,316.63 it had previously paid, while the plaintiff contended that the defendant should recover only two thirds of the reparations benefits it had paid, or $8877.75. The plaintiff argued that the defendant must contribute one third of its recovery of reparations payments toward the legal expenses incurred by the plaintiff in effecting a recovery from the tortfeasor.

This dispute was presented to an arbitrator pursuant to the mandatory arbitration clause in the plaintiff's insurance policy. The arbitrator ruled in favor of the defendant. The plaintiff subsequently made an application to correct or vacate the arbitrator's decision in the Superior Court. The trial court, *Noren, J.,* granted the plaintiff's application and vacated the arbitration award. On appeal, the Appellate Court remanded the case to the trial court for a de novo review of the arbitrator's interpretation and application of the law. See *Dugas* v. *Lumbermens Mutual Casualty Co.,* 14 Conn. App. 153, 156, 540 A.2d 89 (1988). The trial court, *Shaughnessy, J.,* found for the plaintiff on remand, and the Appellate Court affirmed the trial court's judgment on alternative grounds. *Dugas* v. *Lumbermens Mutual Casualty Co.,* 22 Conn. App. 27, 33, 576 A.2d 165 (1990). In its opinion the Appellate

only two thirds of the reparations benefits because the statute reduces the reimbursement to reflect the attorney's fees incurred by the insured in recovering from the tortfeasor.

Title 38 of the General Statutes Revised to 1989 has been transferred, and its sections renumbered, to title 38a of the General Statutes Revised to 1991. For purposes of this opinion, we shall refer to the relevant statutes in their previous numerical form under title 38.

Court stated that § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies,[2] upon which the defendant relied in arguing for a complete recovery of previously paid reparations benefits, "cannot be read to be valid without reference to the attorney's fee provision of [General Statutes] § 38-325 (b)."[3] Id. On the basis of what it perceived as the public policy underlying § 38-325 (b), the Appellate Court concluded that the regulation would be void unless interpreted as incorporating the attorney's fees provision embodied in § 38-325 (b). Id., 39.

---

[2] Section § 38-175a-6 of the Regulations of Connecticut State Agencies provides in pertinent part: "(d) LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workers' compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."

The policy issued by the defendant included a provision based on § 38-175a-6 (d) (3) that authorized the defendant to reduce any amount payable under uninsured motorist coverage by the amount of reparations benefits paid.

[3] General Statutes § 38-325 (b) provides: "Whenever a person who receives basic reparations benefits for an injury recovers damages, either by judgment or settlement, from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under this chapter or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid, *minus an amount which represents the insurer's contribution toward attorney's fees for the collection of basic reparations benefits.* Such amount shall be computed by multiplying the total amount of such

We granted the defendant's petition for certification limited to the following issues: (1) whether the Appellate Court properly considered the validity of § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies;[4] and (2) whether the Appellate Court properly concluded that the insurance regulation was void unless the attorney's fees provision of § 38-325 (b) was read into the regulation. *Dugas* v. *Lumbermens Mutual Casualty Co.*, 216 Conn. 803, 577 A.2d 715 (1990). Because our decision depends upon the relationship between the regulation at issue and § 38-325 (b), we need to consider the background and evolution of these and other statutory and regulatory provisions related to uninsured motorist coverage.

reasonable attorney's fees and costs, by a fraction, the numerator of which shall be the amount of basic reparations benefits received by the claimant and the denominator shall be the amount of damages recovered by the claimant, less court costs. In no event shall such amount exceed one-third the amount of the basic reparations benefits to be reimbursed to the insurer. The insurer shall have a lien on the claimant's recovery for the amount to which he is entitled for such reimbursement; provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant." (Emphasis added.)

[4] The defendant initially argues that we should reverse the decision of the Appellate Court because the issue of the validity of § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies was never briefed or argued before either the trial court or the Appellate Court. We first note that the defendant conceded that its brief to the Appellate Court included "passing" references to this issue. Even in the absence of such references, the defendant's first claim cannot succeed. We have previously noted that this court has the discretionary authority to consider alternative grounds for affirming a judgment even though these grounds have not been briefed or argued by the parties. See *State* v. *Badgett*, 200 Conn. 412, 432 n.10, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). By implication, the Appellate Court has this same authority. We conclude that the Appellate Court did not abuse its discretion in considering the validity of § 38-175a-6 (d) (3).

Moreover, on appeal to this court, the defendant has been able to address fully the merits of whether § 38-175a-6 (d) (3) is void. Therefore, it will not be prejudiced by our consideration of the merits of this issue, and any prejudice it may have suffered in the Appellate Court is cured.

In 1967, the legislature enacted General Statutes § 38-175c,[5] which provides that all automobile liability policies must include uninsured motorist coverage. In 1972, the legislature passed the no-fault insurance statutes, including General Statutes §§ 38-326 and 38-327, which require all motorists to obtain uninsured motorist and basic reparations coverage, and § 38-325 (b), which provides that an insured who receives reparations benefits must reimburse the insurer for the benefits received if he subsequently obtains, by judgment or settlement, an award of damages from the tortfeasor. As originally enacted, § 38-325 (b) did not allow the insured to deduct from the reparations benefits reimbursed to the insurer an amount reflecting the insurer's share of the legal fees incurred by the insured in recovering from the tortfeasor. In 1980, the legislature amended § 38-325 (b) to allow insureds to reduce the amount of the reimbursement by an amount reflecting the insurer's contribution to the attorney's fees expended by the insured in obtaining the damage award. See Public Acts 1980, No. 80-131.

---

[5] General Statutes § 38-175c provides in pertinent part: "(a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. . . . Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding."

In 1975, the insurance commissioner, pursuant to his power under General Statutes § 38-175a[6] to adopt regulations concerning the terms of uninsured motorist coverage, amended § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies in order to allow insurers to seek reimbursement for reparations benefits from amounts paid or payable to their insured by reason of uninsured motorist coverage provided by the insurer. The amended regulation was approved by the legislative regulation review committee. In 1986, the insurance commissioner again amended § 38-175a-6. That amendment, however, did not affect the provisions of the regulation at issue in this case. The legislative regulation review committee reviewed and approved the 1986 amendment to the regulation.

With this background in mind, we turn to the dispositive issue in this appeal, namely whether the defendant, under § 38-175a-6 (d) (3) of the regulations, is entitled to full reimbursement of the $13,316.63 it paid the plaintiff in reparations benefits, or whether the defendant can collect only two thirds of that amount ($8877.75). The Appellate Court concluded that the defendant is entitled to collect only the latter amount because § 38-175a-6 (d) (3) was repealed by implication when the legislature amended § 38-325 (b) in 1980 to allow the reduction of the reimbursement for reparations benefits[7] from damage awards in order to reflect attorney's fees paid by the insured to recover from the

---

[6] General Statutes § 38-175a provides in pertinent part: "MINIMUM PROVISIONS IN AUTOMOBILE LIABILITY POLICIES. (a) The insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies . . . . Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to . . . uninsured motorists coverages . . . ."

[7] In *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 634–39, 513 A.2d 52 (1986), we upheld the decision of the Appellate Court construing the term "basic reparations benefits" to include both basic and added reparations benefits for the purposes of the provisions of General Statutes

tortfeasor. Although the Appellate Court did not explicitly state that it concluded that § 38-175a-6 (d) (3) was repealed by implication by the amendment of § 38-325 (b), this conclusion is implicit in its opinion.

The plain language of § 38-175a-6 (d) (3) of the regulations does not provide for a deduction for attorney's fees from the reimbursement for reparations benefits out of uninsured motorist benefits payable to the insured by his own insurer. The regulation states that "[t]he policy may also provide that . . . *any amount* of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage . . . ." (Emphasis added.) The Appellate Court did not conclude, and the plaintiff does not contend, that prior to 1980 the regulation provided for a setoff for attorney's fees or that the 1975 revision of the regulation was void ab initio because it did not include such a provision. Rather, the Appellate Court concluded that the public policy underlying the 1980 amendment to § 38-325 (b) applied not only to the reimbursement to the insurer of reparations benefits from damage awards from tortfeasors, but also to the reimbursement of those same benefits from uninsured motorist coverage benefits payable by the insurer to the insured.[8] *Dugas* v. *Lumbermens Mutual Casualty Co.,* supra, 22 Conn. App. 37. The court concluded that the regulation would be void as against public policy if interpreted as not providing for a setoff for attorney's fees from the reimbursement for reparations

§ 38-325 (b) concerning the reimbursement of reparations benefits. There is likewise no distinction between these two terms for the purposes of this opinion.

[8] The Appellate Court rejected the plaintiff's claim that General Statutes § 38-325 (b), as opposed to the regulation, is directly applicable to this case. *Dugas* v. *Lumbermens Mutual Casualty Co.,* 22 Conn. App. 27, 31–32, 576 A.2d 165 (1990). The plaintiff does not make that argument in this appeal.

payments under such circumstances, and therefore construed the regulation as allowing the setoff.[9] Id., 39.

This case differs from prior cases in which we have addressed the validity of regulations issued by the insurance commissioner. The party challenging a regulation typically claims that the regulation was inconsistent with or beyond the legislature's grant of authority to the commissioner *at the time the relevant provisions of the regulation were issued.* See, e.g., *Travelers Ins. Co.* v. *Kulla,* 216 Conn. 390, 579 A.2d 525 (1990); *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 370 A.2d 1011 (1976); *Citrano* v. *Berkshire Mutual Ins. Co.,* 171 Conn. 248, 368 A.2d 54 (1976). In contrast, the Appellate Court in this case held that § 38-175a-6 (d) (3), the relevant portions of which were issued in 1975, only became invalid when § 38-325 (b) was amended in 1980. *Dugas* v. *Lumbermens Mutual Casualty Co.,* supra, 22 Conn. App. 39. The Appellate Court ruled, in effect, that the regulation was repealed by implication in 1980 to the extent that the regulation did not allow for a deduction of attorney's fees from reimbursement due to the insurer out of uninsured motorist benefits.[10]

[9] In reaching the conclusion that the public policy underlying General Statutes § 38-325 (b) was "strong and broad based," the Appellate Court relied in part on the existence of similar attorney's fees provisions in other statutes. *Dugas* v. *Lumbermens Mutual Casualty Co.,* 22 Conn. App. 27, 35, 576 A.2d 165 (1990), citing General Statutes § 38-174n (b) (amount of health insurer's lien on workers' compensation award reduced by attorney's fees), and General Statutes § 31-293 (a) (employer's claim for reimbursement of workers' compensation benefits from damage award secured by worker reduced by attorney's fees). We do not find the existence of these statutes sufficient to warrant reading the attorney's fees provision of § 38-325 (b) into § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies.

[10] One can arguably read the Appellate Court decision as actually having ruled that the regulation was *amended* by implication to provide for a setoff for attorney's fees when the legislature amended General Statutes § 38-325 (b). Such a distinction is insignificant, however, because "[r]epeal by implication when only a part of the prior statute is repealed is identical with amendment by implication." 1A J. Sutherland, Statutory Construction (4th Ed. Sands) § 22.22.

Regulations issued by the insurance commissioner to implement the statutes governing uninsured motorist coverage are presumed valid and have the force and effect of a statute. *Travelers Ins. Co.* v. *Kulla,* supra, 399; *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 449, 370 A.2d 1006 (1976); see *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 128, 527 A.2d 672 (1987). Therefore, the rule disfavoring the implied repeal of a statute by the subsequent enactment of another statute also applies to the implied repeal of a regulation by a statute, especially where, as in the present case, the regulation at issue has been approved by the legislative regulation review committee.[11]

The rule disfavoring implied repeals is a "well established principle of statutory construction." *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 521, 468 A.2d 574 (1983). The legislature is presumed to have acted with the intent to create a consistent body of law. *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984). If two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both. *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 607, 376 A.2d 71 (1977). "[E]nactments by the General Assembly are presumed to repeal earlier inconsistent ones to the extent that they are in conflict." *Southern Connecticut Gas Co.* v. *Housing Authority,* supra. Because repeal by implication is generally disfavored, however, the principle applies only when the relevant statutes "cannot stand together." Id.; *Hirschfeld* v. *Commission on Claims,* supra, 606–607.

[11] This conclusion is also consistent with the rule that a state statute should be construed as having preempted a local ordinance only when the legislature has demonstrated its intent to regulate the entire field or when the ordinance is in irreconcilable conflict with the statute. *Dwyer* v. *Farrell,* 193 Conn. 7, 14, 475 A.2d 257 (1984).

There is significant evidence that the legislature, the legislative regulation review committee and the insurance commissioner do not share the Appellate Court's view that the amendment of § 38-325 (b) in 1980 impliedly repealed § 38-175a-6 (d) (3). Since 1980, the legislature has enacted six amendments to § 38-175c, the uninsured motorist coverage statute, yet it has never attempted to preempt the regulation by providing for a setoff for attorney's fees from a reimbursement of reparations benefits payable from uninsured motorist benefits. See Public Acts 1982, No. 82-441, §§ 20, 23; Public Acts 1983, No. 83-267, § 2; Public Acts 1983, No. 83-461; Public Acts 1985, No. 85-7; Public Acts 1986, No. 86-403, §§ 79, 132; Public Acts 1990, No. 90-243, § 127. If a regulation has been in existence for a substantial period of time and the legislature has not sought to override the regulation, this fact, although not determinative, provides persuasive evidence of the continued validity of the regulation. *Phelps Dodge Copper Products Co.* v. *Groppo*, supra, 130.

The approval of revisions to § 38-175a-6 by the legislative regulation review committee in 1986 provides additional support for the defendant's contention that the regulation was not repealed by implication in 1980.[12] General Statutes 4-170[13] requires the legisla-

---

[12] The amendments to the regulation approved in 1986 did not affect those portions of the regulation at issue in this case. The action taken by the legislative regulation review committee in 1986, however, is still pertinent because it provides evidence on whether the committee found the amended regulation to be consistent with the overall statutory scheme that the regulation seeks to implement. See *Caldor, Inc.* v. *Heslin*, 215 Conn. 590, 599, 577 A.2d 1009 (1990); *Texaco Refining & Marketing Co.* v. *Commissioner*, 202 Conn. 583, 600, 522 A.2d 771 (1987).

[13] General Statutes 4-170 provides in pertinent part: "(b) No adoption, amendment or repeal of any regulation . . . shall be effective until the original of the proposed regulation approved by the attorney general . . . ha[s] been submitted to the standing legislative regulation review committee . . . and the regulation has been approved by the committee . . . . The form of proposed regulations which are submitted to the committee

tive regulation review committee to approve the adoption, amendment or repeal of any regulation. "The fact that the commissioner's regulation has been approved by the standing legislative regulation review committee, although not dispositive of the issue before us, is an *important consideration* in our determination of whether the commissioner's regulation comports with the legislative intent . . . ." (Emphasis in original.) *Phelps Dodge Copper Products Co.* v. *Groppo,* supra, 129–30; *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599–600, 522 A.2d 771 (1987).

The fact that the insurance commissioner has never proposed an amendment to the regulation to provide for a setoff for attorney's fees, especially in 1986 when other provisions of the regulation were amended, is an indication that the commissioner does not share the view of the Appellate Court that the regulation was repealed by implication in 1980. "The insurance commissioner has a 'very broad grant of regulatory authority' in filling in the interstices of the uninsured and underinsured motorist coverage legislation . . . ." *Roy* v. *Centennial Ins. Co.,* supra, 473. "In the construction of statutes, great deference is to be accorded to the construction given the statute by the agency charged with its enforcement. *Griggs* v. *Duke Power Co.,* 401 U.S. 424, 433, 91 S. Ct. 849, 28 L. Ed. 2d 158 [1971]; *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155 [1972], cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 [1973]." Id.

The critical factor, however, in determining whether the legislature impliedly repealed § 38-175a-6 (d) (3) in 1980, is whether the public policy underlying the 1980 amendment to § 38-325 (b) applies with equal force in

shall be as follows: New language added to an existing regulation shall be in capital letters and language to be deleted shall be enclosed in brackets . . . ."

the context of the reimbursement of reparations payments from uninsured and underinsured[14] motorist recoveries. The Appellate Court concluded that the policy expressed in § 38-325 (b), as amended in 1980, applied both to the reimbursement of reparations benefits from damage awards and to reimbursement from uninsured and underinsured motorist benefits.[15] *Dugas* v. *Lumbermens Mutual Casualty Co.,* supra, 22 Conn. App. 35. Although we find some similarity in the manner in which that policy is implicated in the context of reimbursement from damage awards and reimbursement from underinsured motorist recoveries, we do not find the connection sufficient to necessitate reading the attorney's fees provision of § 38-325 (b) into the regulation.

A review of the legislative history of the statute reveals that the primary motivation leading to the enactment of the 1980 amendment to § 38-325 (b) was the legislature's concern that it was unfair to allow an insurer to benefit from damage awards obtained by an insured party from a tortfeasor without requiring the

[14] "[A]n 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection." General Statutes § 38-175c (b) (2).

[15] The Appellate Court concluded that the policy underlying General Statutes § 38-325 (b) would require that attorney's fees be set off even in the case of an insured who is unable to secure a tort recovery because the tortfeasor is uninsured but who incurs attorney's fees in the process of arbitrating the uninsured motorist coverage claim. See *Dugas* v. *Lumbermens Mutual Casualty Co.,* 22 Conn. App. 27, 37 n.10, 576 A.2d 165 (1990). We find no support in the legislative history of the 1980 amendment to § 38-325 (b) for the proposition that the statute embraces a policy providing for the setting off of attorney's fees even when these fees are solely related to securing uninsured motorist benefits from one's own insurer. In such a case, the insurer receives no benefit arising from the insured's expenditure for legal fees. This conclusion does not decide this case, however, because the tortfeasor was underinsured, rather than uninsured.

carrier to bear some of the legal costs incurred in effecting that recovery. 23 S. Proc., Pt. 4, 1980 Sess., pp. 1266–73; 23 H.R. Proc., Pt. 12, 1980 Sess., pp. 3629–33; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1980 Sess., pp. 341–45, 416–20. It is important to note that there are two distinct benefits that an insurer may receive as a result of the insured having secured a tort recovery, and it is necessary to consider these benefits separately in analyzing the purpose of the 1980 amendment to § 38-325 (b).

The first benefit received by the insurer is reimbursement of the reparations benefits it had previously paid to the insured. If the tortfeasor's automobile is fully insured, the insurer will be reimbursed its reparations benefits out of the tort recovery secured by the insured. In such a case, the insurer has benefited from the creation of a separate pool of funds by the insured from which the reimbursement of reparations payments is obtained. There is no dispute that under those circumstances § 38-325 (b) requires the insurer to share the legal fees related to that benefit.

In cases like this one involving an underinsured motorist, a tort recovery provides the insurer with a second benefit for which § 38-325 (b) does not require the insurer to contribute to the related legal cost. The benefit is that the insurer's potential liability to the insured under the uninsured motorist coverage is reduced by any tort recovery. Nevertheless, § 38-325 (b) provides that the setoff for legal fees to which the insured is entitled is based only on a percentage of the reparations benefits reimbursed, not upon a percentage of the amount by which the insurer's liability under the uninsured motorist coverage has been reduced. The amount payable to the plaintiff under the uninsured motorist coverage of his policy has been reduced by $20,000 because he secured that amount

from the tortfeasor. As we noted, however, § 38-325 (b) does not reimburse insureds for the legal fees related to that benefit to the insurer. Rather, § 38-325 (b) requires only that the insurer reimburse the insured for the legal fees related to the amount of reparations benefits that the insurer recovers.

The question then becomes whether the plaintiff has benefited the defendant by obtaining funds from which reparations benefits will be reimbursed. When, as in the present case, the insurer can seek reimbursement of reparations benefits from either the damage award or the underinsured motorist benefits and chooses the latter course, it cannot be said that the insurer has benefited from the tort recovery in the manner contemplated by § 38-325 (b).[16] While we recognize that the tort recovery clearly has benefited the defendant by reducing the underinsured motorist benefits payable, we do not discern any legislative policy to compel insurers to share the legal cost related to that benefit.

It is not necessarily an anomalous result that an insured party injured by a fully insured motorist is able to obtain a contribution from the insurer to his attorney's fees from the amount of reparations benefits reimbursed to the insurer, while an insured party injured by an underinsured motorist is not. The legis-

---

[16] The defendant stated that in all cases where it can seek reimbursement from either a tort recovery under General Statutes § 38-325 (b) or from underinsured motorist benefits pursuant to § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies, it will pursue the latter course because § 38-325 (b) requires a setoff for attorney's fees while the regulation, it contends, does not.

We note that it seems arbitrary to rely on the source of the reimbursement, a factor within the insurer's control, as the criterion for determining whether the insurer has been benefited. The existing statutory and regulatory structure give the insurer this power, however, and our decision must be made within this framework. See General Statutes § 38-325 (b); Regs., Conn. State Agencies § 38-175a-6 (d) (3).

lature reasonably could have determined that requiring insurers to share the legal expenses in securing reimbursement of reparations benefits in cases involving underinsured motorists, where the insurer would also have to pay underinsured motorist benefits, would place greater pressure on insurance rates than it was willing to tolerate.[17] Moreover, even if the plaintiff is correct that this result is anomalous, his remedy lies with the legislature or the insurance commissioner, not with this court.

We conclude that the plain language of § 38-175a-6 (d) (3) does not provide for the setting off of attorney's fees against the reimbursement of reparations benefits from uninsured or underinsured motorist recoveries and that the regulation as so construed is valid. We reach this conclusion because of: (1) the general disfavor with which this court looks upon implied repeals; (2) the evidence that the legislature, the legislative regulation review committee and the insurance commissioner do not regard the regulation as inconsistent with the public policy underlying the attorney's fees provision of § 38-325 (b); and (3) our own doubt as to whether that public policy applies to the regulation at issue. In a case involving a challenge to a different provision of § 38-175a-6, we noted that "[t]he automobile liability insurance business is one which is extensively regulated . . . and judicial revision of the terms upon which such policies are issued may produce extensive repercussions throughout the insurance industry of the state." *Roy* v. *Centennial Ins. Co.*, supra, 473. Those repercussions are to be avoided in the absence of a clear legislative intent to revise the existing regulations and statutes.

---

[17] The benefit argument is also weaker in a case involving an underinsured motorist, as opposed to a fully insured motorist, because General Statutes § 38-175c (b) (1) requires an insured party to exhaust his remedies against the tortfeasor as a condition of obtaining underinsured motorist benefits.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to reinstate the arbitration award.

In this opinion the other justices concurred.