[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves an automobile accident that occurred on May 8, 1993, between the plaintiff, Robert Zappone, and Arcangelo Dellanno, an uninsured motorist. At the time of the accident, the plaintiff had a contract of automobile uninsured motorist CT Page 1808 coverage with the defendant, Nationwide Mutual Insurance Company. On August 24, 1995, the plaintiff filed suit against the defendant, pursuant to the insurance contract, for injuries, expenses and consequential losses which he sustained in the May 8, 1993 automobile accident.
On September 24, 1996, after a full trial, the jury returned a plaintiff's verdict in the amount of $6,000. On October 28, 1996, before final judgment was entered, the parties were heard to determine the amount of any set-off(s).
In support of its motion, the plaintiff contends that the defendant made payments by virtue of the medical pay provisions of its policy, and that these medical payments are a collateral source from which the plaintiff is entitled to deduct, pursuant to General Statutes § 52-225a (c), "`any amount which has been paid, contributed . . . by or on behalf of; the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury.'" The plaintiff maintains that the premium payments he has paid for his automobile coverage will "effectively nullify any possible claim for recoupment Nationwide may have regarding the medical payments made.[1]
The defendant argues that it is entitled to a set-off for the full amount of no-fault payments it paid to the plaintiff, i.e., $3,928.20, for the claims arising out of the accident giving rise to the uninsured motorist claim. The defendant makes such an assertion based on contract law, claiming that language found in the uninsured motorist portion of the insurance contract it entered into with the plaintiff allows it to deduct any no-fault payments it made from the jury verdict awarded to the plaintiff.[2] The plaintiff does not address this argument in either his motion or memorandum in support thereof. The defendant also argues that it is entitled to a credit of $1,905, the amount of the bill of costs it submitted. Both parties have agreed that to date the defendant has paid the plaintiff a total of $3,928.20 in benefits as a result of the accident that occurred on May 8, 1993.
Although the plaintiff argues that the payments he received are collateral source payments, he fails to provide the court with any case law which supports this assertion. In fact, the plaintiff's supporting memorandum is devoid of any case law. The defendant claims that the payments that it made to the plaintiff CT Page 1809 were made pursuant to the no-fault coverage of the plaintiffs automobile insurance. Such benefits are not a collateral source. See Rosato v. Appel, Superior Court, judicial district of Danbury, Docket No. 304583 (June 7, 1996, Mihalakos, J.);Gurushanth v. Soto, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 515223 (December 13, 1993, Sullivan, J.). Furthermore, in the present case the payments at issue were made by the defendant, itself, and therefore were not made by a collateral source. See Benoit v.Travelers Ins. Co., Superior Court, judicial district of New London at Norwich, Docket No. 105293 (March 14, 1996, Hendel, J.). Therefore, the payments made to the plaintiff by the defendant are not collateral source payments and are not governed by General Statutes § 52-225a.
In any event, the defendant is not making any claim for collateral source payments pursuant to § 52-225a. The defendant's sole claim is that it is due a reduction in the jury award in the amount of the no-fault payments which it has already made to the plaintiff based on contract law.
Therefore, the next issue that must be addressed by the court is the defendant's claim that it is entitled to include within the uninsured motorist portion of its insurance policy a clause allowing it to deduct any no-fault payments it has previously made to the plaintiff from any uninsured motorist payments due the insured.
A deduction for no-fault or basic reparations benefits previously paid is permissible under § 38a-334-6 (d)(3) (formerly § 38-175a-6 (d)(3)) of the Regulations of Connecticut State Agencies. See Dugas v. Lumbermens Mutual CasualCo., 217 Conn. 631, 587 A.2d 415 (1991). General Statutes §38a-336 (b) requires that an insurer pay its insured up to the limits of the policy's uninsured motorist coverage after the liability limits of all other applicable insurance policies have been exhausted by payment of judgments or settlements. Bennett v.Automobile Ins. Co. of Hartford, 230 Conn. 795, 800, 646 A.2d 806
(1994). That statute also provides that "in no event shall a total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage." General Statutes § 38a-336 (b). An insurer, however, may not by contract reduce its liability for such uninsured motorist coverage except as [§ 38a-334-6 (d)] of the Regulations of CT Page 1810 Connecticut State Agencies expressly authorizes. Streitweiser v.Middlesex Mutual Assurance Co., 219 Conn. 371, 377, 593 A.2d 498
(1991).
Section 38a-334-6 (d)(3) of the Regulations of Connecticut State Agencies, which applies to uninsured motorist coverage, provides in pertinent part: "The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid orpayable under the policy will reduce the damages which theinsured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment." (Emphasis added.) Regs., Connecticut State Agencies §38a-334-6 (d)(3). "Therefore, pursuant to § 38a-334-6 (d) (3), an insurer may provide in the insurance policy for a reduction of its obligation to pay uninsured motorist benefits for the full amount that the insurer has paid as basic reparations benefits." DelGreco v. Allstate Ins. Co., Superior Court, judicial district of New Haven, Docket No. 365088 (July 23, 1996, Celotto, S.T.R.).
Basic reparation benefits are provided, without regard to fault, to the basic reparation insured for personal injuries and economic loss suffered as a result of automobile accidents. Reimbursement to the insurer of reparations benefits paid when the insured recovers damages for the same injuries comports with the general purpose of the no-fault legislation, which is to minimize the cost of mandatory insurance coverage by minimizing the amount of benefits paid by the insurer. Travelers Ins. Co. v.Truck Equipment, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 500686 (March 4, 1992, Burns, J.).
Therefore, the defendant is statutorily permitted to provide for a reduction of its obligation to pay uninsured motorist benefits for the full amount that the insurer has paid as no-fault or basic reparations benefits in its insurance policy. In the present case, within the uninsured motorist portion of the insurance policy there is a provision that reads "[a]ny amount payable to or for the insured for economic loss under this coverage will be reduced by the amount of any reparations benefits paid or payable under this or any other auto insurance policy." The jury awarded $2,200 non-economic damages and $3,800 economic damages. Since such a clause was included in the CT Page 1811 insurance policy in question, the jury award of $6,000 should be reduced by the amount of the $3,800 for economic damages since basic reparations payments were made by the defendant.
Finally, the court must determine what portion of the $1,910 bill of costs submitted by the defendant it is entitled to deduct from the jury award.[3] Due to the fact that the jury verdict was less than defendant's offer of judgment, the parties essentially only disagree as to the amount of the fourth and final item on the bill of costs, the $1,750 listed as the cost of the trial testimony of Dr. John Mara. Plaintiff's counsel argues that its expert witness, Dr. Matza, an equally qualified orthopedic surgeon, charged only $750 for his testimony and that the bill of costs should be reduced to be more in line with that amount. The defendant claims that Dr. Mara's fee included travel time and preparation time, which Dr. Matza's fee did not, and that therefore they are entitled to the reduction of the jury verdict of the entire amount submitted in its bill of costs. The court allows a reasonable fee of $750.
Therefore, deducting $910 costs and $3,800 for basic reparations under the insurance contract from the $6,000 verdict, the court enters judgment for the plaintiff in the amount of $1,290.
KULAWIZ, J.