[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE, MODIFY OR CORRECT ARBITRATION AWARD
On April 6, 1992 petitioner Robert Mackler filed this application to vacate, modify or correct an arbitration a dated March 2, 1992 in favor of respondent Saab Cars USA, Incorporated (hereinafter Saab).
The record reveals that on July 30, 1990 petitioner Robert Mackler purchased a 1989 Saab 900 Turbo from Secor's CT Page 10158 Auto Center, Inc. (hereinafter Secor's) for $23,976. On six occasions from August 14, 1990 until November 12, 1991, petitioner brought his vehicle to two independent authorized Saab dealerships, Secor's, and Hoffman Enterprises (hereinafter Hoffman's), complaining of problems with the vehicle's operation. The relevant complaints concerned: (1) vibration at high speeds, (2) rough/inoperable gear shifting, and (3) engine noise. Dissatisfied with the vehicle's performance after each servicing, petitioner filed a complaint with the Better Business Bureau (hereinafter BBB) in November of 1991. On November 15, 1991, a Saab Consumer Relations Representative contacted the petitioner and recommended a test drive of the vehicle with Rick Paparella, Service Manager of Hoffman Saab. On November 27, 1991 petitioner and Paparella test drove the vehicle. Paparella found that a vibration existed and suggested that Saab technicians conduct a thorough evaluation. Petitioner did not arrange for an evaluation, proceeding instead to arbitration before the BBB. On December 19, 1991 the BBB issued its decision releasing Saab "from all responsibility for vehicle repurchase at the present time." The BBB further recommended that Saab be provided an opportunity to correct any problems with the vehicle. The petitioner rejected the BBB's decision and on January 9, 1992 filed a request for arbitration with the Department of Consumer Protection pursuant to General Statutes 42-181(b), the Lemon Law Statute.
On March 2, 1992 the arbitration panel found adversely to the petitioner and ordered that no action be taken by the manufacturer. Petitioner filed an application to vacate, modify or correct the award and the record of the arbitration on April 6, 1992 and June 1, 1992, respectively. On June 11, 1992 defendant further supplemented the record.
On July 1, 1992 plaintiff filed a memorandum of law in support of his application. In support of his application, plaintiff makes the following claims:
 A. The Arbitrators Improperly Exercised Their Statutorily Mandated Powers.
 B. The Defendant Failed To Raise That The Alleged Nonconformity Does Not Substantially Impair The Use, Safety And Value of The Vehicle As An Affirmative Defense. CT Page 10159
 C. The Arbitrators' Decision Regarding The Use, Safety And Value of The Subject Vehicle Is Not Supported By The Substantial Evidence In The Record And Prejudices The Substantial Rights Of Mr. Mackler.
On July 18, 1992, the defendant filed a memorandum of law in opposition to the plaintiff's application.
I. Subject Matter Jurisdiction
Jurisdiction over the subject matter is the power of the court to hear and determine cases of the general class to which the proceedings in question belong. Castro v. Viera,207 Conn. 420, 427, 541 A.2d 1216 (1988). Lack of subject matter jurisdiction may be raised at any time, LaCroix v. Board of Education, 199 Conn. 70, 80 n. 8, 505 A.2d 1233
(1986), and may be raised by the court. Sasso v. Aleshin,197 Conn. 87, 89-90, 495 A.2d 1066 (1985). When subject matter jurisdiction is raised "[it] must be disposed of no matter in what form it is presented;" and the court must "fully resolve it before proceeding further with the case." Castro, supra, 429.
General Statutes 52-420 provides in pertinent part: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." General Statutes52-420(b); Vail v. American Way Homes, Inc., 181 Conn. 449,452-53, 435 A.2d 993 (1980). "An application to vacate an arbitration award triggers special statutory proceedings which are not civil actions." Middletown v. Police Local, No. 1361, 187 Conn. 228, 231, 445 A.2d 322 (1982). Because the filing of an application to vacate invokes the statutory jurisdiction of the superior court under 52-408, et seq., the failure to file a timely application deprives the court of subject matter jurisdiction.
In the present case, the arbitration was held on March 2, 1992. The arbitrators rendered the award on the same day. The petitioner filed his application on April 6, 1992, thirty-four days after the award was rendered. There is, however, no evidence in the file or record that indicates when the petitioner received notice of the award. If the CT Page 10160 petitioner had notice of the award on March 2, 1992. the petition would be untimely. However, on the basis of the record presented to the court, the court concludes that the application was timely, enabling the court to consider the case on its merits.
II. Scope of Review
"The department of consumer protection shall provide an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles which do not conform to all applicable warranties under the terms of section 42-179." General Statutes42-181(a). Either party to the arbitration may, thereafter, make application to the superior court for an order confirming, vacating, modifying or correcting any award. Id., subsection (b)(4).
 A review of such application shall be confined to the record of the proceedings before the arbitration panel. The court shall conduct a de novo review of the questions of law raised in the application. In addition to the grounds set forth in sections 52-418 and 52-419, the court shall uphold the award unless it determines that the factual findings of the arbitration are not supported by substantial evidence in the record and that the substantial rights of the moving party have been prejudiced. If the arbitrators fail to state findings or reasons for the award, or the stated findings or reasons are inadequate, the court shall search the record to determine whether a basis exists to uphold the award.
III. Petitioner's Arguments
A. Petitioner's first ground for his application is that the arbitrators improperly exercised their statutorily mandated powers. While somewhat unclear, it appears that petitioner is arguing that, in accepting the grievance for arbitration, the department of consumer protection and the arbitration panel found that the manufacturer or authorized dealer had made a "reasonable number of attempts" to repair the vehicle. Petitioner argues that this "decision," that CT Page 10161 the requirements of section 42-179 have been met, limits the arbitrators to one issue, "whether the complained of defect `substantially impairs the use, safety or value of the vehicle to the consumer.'"
General Statutes Chapter 743b, entitled New Automobile Warranties, provides in pertinent part:
 If a new motor vehicle does not conform to all applicable express warranties, and the consumer reports the nonconformity to the manufacturer, its agent or its authorized dealer during the period of two years following the date of original delivery of the motor vehicle to a consumer or during the period of the first eighteen thousand miles of operation, whichever period ends first, the manufacturer, its agent or its authorized dealer shall make such repairs as are necessary to conform the vehicle to such express warranties, notwithstanding the fact that such repairs are made after the expiration of the applicable period.
General Statutes 42-179(b).
 If the manufacturer, or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use, safety or value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a new motor vehicle acceptable to the consumer, or accept return of the vehicle from the consumer . . . .
General Statutes 42-179(d). "It shall be an affirmative defense to any claim under this section (1) that an alleged nonconformity does not substantially impair such use, safety or value . . . ." Id.
 It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties, if (1) the same nonconformity CT Page 10162 has been subject to repair four or more times by the manufacturer or its agents or authorized dealers during the period of two years following the date of original delivery of the motor vehicle to a consumer or during the period of the first eighteen thousand miles of operation, whichever period ends first, but such nonconformity continues to exist . . . . .
General statutes 42-179(e).
General Statutes 42-181 provides for an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles not conforming to all applicable warranties under the terms of section 42-179. See General Statutes 42-181(a). Arbitration of the dispute may be denied by the department of consumer protection prior to submission to arbitration or by the arbitration panel prior to rendering its decision on the merits if it is determined that the consumer failed to allege the manufacturer's non-compliance with section42-179. General Statutes 42-181(b). If the dispute is submitted to arbitration "[t]he arbitration panel shall base its determination of liability solely on whether the manufacturer has failed to comply with section 42-179."
The plain language of section 42-181 evidences that a finding of arbitrability under section 42-181(b) is a preliminary finding of the legal sufficiency of the consumer's complaint and is not a finding on the merits that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties. To hold otherwise would amount to a trial on the merits of the dispute based solely on the consumer's complaint. Accordingly, the application cannot be granted on this ground.
B. Petitioner further argues that the arbitrators improperly considered that only the authorized dealers and not the manufacturer had been given an opportunity to remedy the complained of defects.
General Statutes 42-179 provides in pertinent part: CT Page 10163
 No consumer shall be required to notify the manufacturer of a claim under this section and sections 42-181 to 42-184, inclusive, unless the manufacturer has clearly and conspicuously disclosed to the consumer, in the warranty or owner's manual, that written notification of the nonconformity is required before the consumer may be eligible for a refund or replacement of the vehicle. The manufacturer shall include with the warranty or owner's manual the name and address to which the consumer shall send such written notification.
General Statutes 42-179(c). Section 42-179 further provides:
 If the manufacturer, or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use, safety or value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a new motor vehicle acceptable to the consumer, or accept return of the vehicle.
General Statutes 42-179(d) (Empahsis added.)
"The courts must apply enactments according to the plain terms and cannot read into a statute something that is not there." Kilpatrick v. Board of Education, 206 Conn. 25,28, 535 A.2d 1311 (1988). "The use of the disjunctive `or' between the two parts of the statute indicates a clear legislative intent of separability . . . ." State v. Pascucci, 164 Conn. 69, 72, 316 A.2d 750 (1980), quoting State v. Dennis, 150 Conn. 245, 248, 188 A.2d 65 (1963).
In the present case, there is no evidence in the record that the manufacturer requested written notification from the consumer of a claimed nonconformity of the vehicle. Further, pursuant to section 42-179(d) the attempts at repair may be made either by the manufacturer or by its authorized dealer. It is undisputed that petitioner brought the vehicle for service on six occasions to two authorized Saab dealerships. Therefore, the CT Page 10164 arbitrators could not lawfully deny the consumer relief on the ground that the manufacturer was not given an opportunity to repair the vehicle.
In releasing Saab from liability the arbitrators made the following findings of fact:
 After weighing the evidence presented by both parties and the technical expert we find the problems in question do exist. The consumer has taken the vehicle to dealer six times for repairs with no success in correcting the problem. The manufacturer offered to correct the problem but the consumer did not accept the offer.
The arbitrators held that, "the problems do not affect the use, value, or safety of the vehicle at this time. The manufacturer's warranties still covers (sic) the problems, and fell (sic) they can correct the problems if give (sic) a chance." Arbitrators' Award, dated March 2, 1992.
There is sufficient evidence in the record to support the arbitrators' findings of fact. Further, the arbitrators' holding expressly provides that it is based on the use, safety, and value of the vehicle, not on Saab's lack of repair attempts. Because there is substantial evidence to support the arbitrators' decision, as discussed infra, the petitioner's argument must fail.
C. Petitioner's next ground for his application is that the respondent failed to raise as an affirmative defense that the vehicle's nonconformity does not substantially impair the use, safety, or value of the vehicle.
General Statutes 42-179(d) provides in pertinent part;
 If the manufacturer, or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which CT Page 10165 substantially impairs the use, safety or value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a new motor vehicle acceptable to the consumer, or accept return of the vehicle . . . .
 It shall be an affirmative defense to any claim under this section (1) that an alleged nonconformity does not substantially impair such use, safety or value or (2) that a nonconformity is the result of abuse, neglect or unauthorized modifications or alterations of a motor vehicle by a consumer.
General Statutes 42-179(d) (Emphasis added.)
"In the absence of ambiguity, the intent of the legislature is to be found not in what it meant to say but in what it did say." Furstein v. Hill, 218 Conn. 610, 622,590 A.2d 939 (1991). A statute should be read as a whole and interpreted so as to give effect to all of its provisions. Pintavelle v. Valkanos, 216 Conn. 412, 418,581 A.2d 1050 (1990). "The legislature is presumed to have acted with the intent to create a consistent body of law." Dugas v. Lumbermens Mut. Cas. Co., 217 Conn. 631, 641,587 A.2d 415 (1991).
Interpreting the plain language of subsection (d) of section 42-179, the court should construe the language "this section" to mean 42-179. This construction is further supported by subsection (c) of 42-179 which reads in part, "No consumer shall be required to notify the manufacturer of a claim under this section and sections42-181 and 42-184 . . . ." (Emphasis added.) Also subsection (a) of 42-179 provides in part, "as used in this chapter . . . ." (Emphasis added) If the legislature had intended the defense to apply to 42-181 or other sections of chapter 743b, then it would have done so expressly in the text of subsection (d). If the court were to construe the statute as such, the result would be that, after a reasonable number of failed repair attempts, the manufacturer could defend against vehicle replacement or refund on the ground that the alleged nonconformity does not impair the vehicle's use, safety or value. See General Statutes CT Page 1016642-179(d). A dissatisfied consumer could then file a petition for arbitration claiming that the manufacturer has failed to comply with section 42-179. See General Statutes42-181(c).
D. Petitioner's final ground in support of his application is that the arbitrators' decision regarding the use, safety, and value of the vehicle is not supported by substantial evidence. Petitioner argues in part that: (1) because he testified that the defect in the vehicle impairs the use, safety and value of the vehicle to him, and (2) Saab failed to prove that the nonconformity did not substantially impair the use, safety, or value of the vehicle to the petitioner, the arbitrators erroneously found in favor of the manufacturer.
Pursuant to General Statutes section 42-179, the manufacturer must replace the vehicle or issue a refund "[i]f the manufacturer, or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use, safety or value of the motor vehicle to the consumer after a reasonable number of attempts . . . ." General Statutes42-179(d).
General Statutes 42-181(c) provides that "[t]he arbitration panel shall base its determination of liability solely on whether the manufacturer has failed to comply with section 42-179." The arbitrators found adversely to the consumer and ordered that no action be taken against the manufacturer. Specifically, the arbitrators found that the problems with the vehicle did not impair its safety, use, or value. The court on review must determine whether the factual findings of the arbitrators are supported by substantial evidence in the record and whether the substantial rights of the moving party have been prejudiced. See General Statutes42-181(c)(4).
In applying the substantial evidence test, the court may look for guidance to the interpretive law compiled in the context of administrative agency appeals.
"In determining whether [a] finding is supported by CT Page 10167 `substantial evidence,' a court must defer to the [fact finder's] assessment of credibility of the witnesses and to the [factfinder's] right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." Briggs v. State Employees Retirement Com'n210 Conn. 214, 217, 554 A.2d 292 (1989). Substantial evidence may be found to exist "if the record affords `a substantial basis of fact from which the fact in issue can be reasonably inferred.'" Id. "The fact that the possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent [the factfinder's] findings from being supported by substantial evidence." Laufer v. Conservation Com'n of Fairfield, 24 Conn. App. 708,716, 592 A.2d 392 (1991).
The record reveals the following evidence in support of the arbitrator's factual findings. On the issue of use, safety, and value, there is evidence that petitioner bought the vehicle in July of 1990 with approximately one hundred miles on it and drove the vehicle until March of 1992, thereby putting 25,081 miles on the vehicle. There is also evidence that the petitioner reported the problems with the car as vibration or shimmy, rough gear shifting and engine noise. The service records state that in the majority of times, the dealer was unable to duplicate the vibration or gear problems, and found that the reported noise was normal. There is also evidence that the petitioner did not test drive the vehicle with the Saab technicians to point out the alleged nonconformities until November 7, 1991 when the vehicle had between 15,134 and 22,150 miles on it. After test driving the vehicle, technical expert Green testified that the chain noise was "somewhat suspect," the gear shifting was `normal,' and the "vibration shimmy did exist at 45 miles an hour and got worse as speed increased." Green further testified that the vibration "[probably . . . was the tires in the first place." Green also suggested that the dealer probably has not yet determined the cause of the vibrations. There is sufficient evidence in the record to support the arbitrators' finding that the problems with the vehicle do not impair its use, safety, or value. While the petitioner testified that the problems did impair the vehicle's use, value, and safety, the arbitrators were at liberty to find such testimony not credible. Aside from petitioner's own testimony, he failed to put on any other evidence as to CT Page 10168 this issue. The court concludes that there is substantial evidence to support the finding. Petitioner's application is denied as to this ground, as well.
For the foregoing reasons, the Application to Vacate, Modify or Correct Arbitration Award is denied in all respects.
Barry R. Schaller, J.
ENDNOTES
A summation of the service attempts is as follows:
Date Dealer Mileage Complaint
Vibration
 1. 8/14/90 Secor's 1,277 Tires shimmy at highway speeds (dealer unable to duplicate)
 2. 8/17/90 Hoffman 1,559 Vibration in wheel at high speed (dealer unable to duplicate)
 3. 8/30/90 Secor's 2,300 Vibration in steering at highway speed
 4. 10/24/90 Secor's 7,567 Vibration in front end at 60 mph or more (dealer unable to duplicate)
 5. 4/18/91 Hoffman 15,134 Floorboards vibrate at all speeds (dealer unable to duplicate)
CT Page 10169 6. 11/12/91 Hoffman 22,150 Vibration in floor pedals at high speeds (dealer unable to duplicate)
Gear Shifting
 7. 8/14/90 Secor's 1,277 Gears rough, hard to shift into first/reverse (no problem found)
 8. 8/30/90 Secor's 2,300 Knob to set into reverse is inoperable, gear at times clunks in reverse (dealer unable to duplicate)
 9. 10/24/90 Secor's 7,576 Reverse lock inoperable (replaced reverse lock)
10. 11/12/91 Hoffman 22,150 Hard to shift, clicks into second and fourth (dealer unable to duplicate)
Engine Noise
11. 10/24/90 Secor's 7,567 Engine tapping noise at idle (normal injector tick)
12. 4/18/91 Hoffman 15,134 Abnormal valve noise (normal)
13. 8/1/91 Hoffman 18,887 Ticking noise from engine (normal) CT Page 10170
14. 11/12/91 Hoffman 22,149 Knocking noise at idle (normal)