[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF LAWRENCE PANZA, JR.'S APPLICATIONTO MODIFY ARBITRATION AWARD
This court heard the above-referenced application and the application by Transamerica Insurance Company to vacate or correct an arbitration award, Docket No. CV 95-0381407-S, at a joint hearing on the two applications.
As the court did in its decision on the Transamerica application of even date herewith, the court at the outset will set forth in this opinion the entire arbitration award. Some of the issues between the parties are raised in this case and some are raised in Docket No. CV 95-0381407-S.
On May 26, 1995, in an arbitration award, a three-member arbitration panel entered an interim decision which stated:
 "We, the arbitrators, duly sworn, hereby make the following finding: 1. that the coverage under the Transamerica Insurance policy in the above captioned case is $2,000,000."
That award was agreed to by two arbitrators and dissented to by a third arbitrator. The essential issue leading to that interim award was whether a $1,000,000 uninsured motorist coverage on each of two vehicles which were insured by a business policy, with personal endorsements, produced total coverage of $1,000,000 or stacked coverage in the amount of $2,000,000. The right to stack under the circumstances of the case was the issue addressed in the court's decision in Docket No. CV 95-0381407-S decided on this date. In that decision, this court decided that the CT Page 1353-L plaintiff had the right to stack the policies and that accordingly the coverage was $2,000,000.
While the right to stack under the facts of the case appears to the court to be a matter of first impression, which was well briefed and heartily contested, the court has decided the matter under the other docket number and accordingly will treat the coverage as $2,000,000 for purposes of this decision. It is further clear that the arbitrators found the total damages to Lawrence Panza, Jr. to be $1,550,000. This number is not contested for purposes of this application. The arbitrators' finding was as follows:
Coverage $2,000,000 (See Docket No. CV 95-0381407-S).
Damages $1,550,000.
Credit for payment from liability carrier $100,000.
 Credit for payment of basic reparations benefits $96,667 ($100,000 less $3,333).
Net award $1,353,333.
The parties agree that the $100,000 paid by the liability carrier should be deducted from the damages and that the insurer is entitled to a credit for that amount. This court having decided the stacking issue, the argument between the parties centers on what deduction, if any, is available to the company because of the payment of $100,000 in extended basic reparations benefits.
It is uncontested that the Transamerica policy provided $100,000 in "added reparations benefits" (no-fault) to Larry Panza, Sr. It is undisputed that, as a result of his injuries, Larry Panza, Jr. received payment of $100,000 in no-fault benefits under the provisions of the Transamerica policy. It is further undisputed that the plaintiff tendered $3,333 to Transamerica which was tendered in full satisfaction of "all payments due to you under the law of the State of Connecticut for your payments of no-fault benefits." [Letter of November 8, 1993 and check of November 3, 1993.] The claimant cashed the check. The arbitrators determined that the full amount of no-fault payment, $100,000, less the $3,333 previously paid, should be deducted from the amount of underinsured benefits payable pursuant to their award. Thus, the arbitrators awarded a credit of $96,667 to Transamerica.
DISCUSSION
CT Page 1353-M
The claimant first makes the claim that Transamerica should be entitled to no no-fault credit because the payment of $3,333 was in accord and satisfaction of any rights to a credit which Transamerica had.
The letter sent by the plaintiff's attorney dated November 8, 1993 to the insurance company read as follows: ". . . in full and final satisfaction and releases Lawrence Panza, Jr. from any further obligations to Transamerica for their payments of medical expenses in this case. If you have any questions please contact me prior to December 4, 1993. After that time, I shall assume that this payment is in full satisfaction of any debts owed to Transamerica arising out of these injuries." Transamerica accepted the check as repayment and cashed the check. Transamerica did not protest or question the repayment.
Transamerica had two distinct avenues which it could pursue to recover the extended basic reparations benefits which it paid pursuant to its Endorsement A720C. Transamerica had a right, pursuant to § 33a-334-6 (d) of the regulations, to reduce underinsured motorist coverage by the amount of unreimbursed no-fault payments. The insurance company also had the same right to reduce underinsured payments by the amount of the extended basic reparations payments pursuant to the language of its Endorsement A720C which provided:
 "In consideration of the reduction in premium for the underinsured motorist coverage and the expansion of the required basic reparations benefits, any amount payable for economic loss under the uninsured motorist coverage shall be reduced by the amount of any basic reparations benefit paid or payable under this endorsement because of bodily injury to an eligible insured person."
In addition to the right to deduct the basic reparations benefit paid from its underinsured obligation, the insurer had the alternative of claiming a payback for the basic reparations benefit paid from the amount recovered from the tortfeasor.
The parties agree that to the extent that Panza received money from the tortfeasor, $100,000, that money is properly deducted from the underinsured award. The Supreme Court held in Dugas v. Lumberman MutualCasualty, 217 Conn. 631 (1991), that a claimant is not entitled to a contribution from the insurer towards attorney's fees from the amount of reparations benefits reimbursed to the insurer in an underinsured motorist claim. In the same case, the court has held that any amount of basic CT Page 1353-N reparations benefits paid or payable under a policy shall be deducted in full from the uninsured motorist obligation, not withstanding the potential obligation of a carrier to pay an "attorney's fee" pursuant to Conn. General Statute § 38a-369 (b) (i.e., a recovery from a tortfeasor).
In the case before it, the court does not find accord and satisfaction. Accord and satisfaction is a method of discharging a claim when the parties agree to give and accept something other than that which is due in settlement of the claim and to perform the agreement. W. H. McCune, Inc.v. Revzon, 151 Conn. 107 (1963). When, as in this case, the consent of the creditor is sought to be inferred from the acceptance of a less sum than is owed, the fact that such sum is offered in discharge of the whole claim must "be made known to the creditor in some unmistakable manner."Crucible Steel Company v. Premier Mfg. Co., 94 Conn. 652, 656 (1920). Whatever plaintiff may have communicated to Transamerica with regard to plaintiff's obligations to repay basic reparations benefits from the tort recovery, plaintiff never informed Transamerica regarding his intention to extinguish Transamerica's right pursuant to §38a-334-6 (d) of the regulations and pursuant to the policy language to reduce underinsured motorist coverage payment by the amount of the unreimbursed no-fault payments with the defendant's acceptance of the check. Therefore, there can be no meeting of the minds or consideration as required for accord and satisfaction.
The plaintiff next seeks to limit the reduction of underinsured payment as a result of the extended basic reparations benefits by pointing toShelby Mutual Insurance v. Della Ghelfa, 200 Conn. 630. In Shelby Mutual,
the Supreme Court held "where the insurer has paid benefits for economic loss in excess of $5,000.00 pursuant to increased coverage which it was required to provide by a regulation of the insurance commissioner, the entire amount of those benefits paid constitutes `basic reparations benefits' and is subject to the reimbursement and lien rights created by § 39-325 (b)." (Now recodified as § 38a-369.) Shelby Mutual,
at 634-35 (1986). It is true, as the claimant argues, that companies must provide $5,000.00 in basic reparations and must offer added reparations in the amount of $10,000.00, $15,000.00, and $25,000.00. The claimant argued that since the maximum amount of basic reparations benefits required to be offered pursuant to Connecticut State Regulations § 38a-374-1 is $25,000.00, the most that can be offset against underinsured motorist is $25,000.00. The court notes that the regulation specifically states: "This regulation is not intended to restrict the number of additional optional added reparations coverage any company may wish to market voluntarily." The basic reparations benefit endorsement is governed by Conn. General Statutes § 38a-369 (b) which provides: "The insurer is entitled to reimbursement from the claimant to the extent CT Page 1353-O that said basic reparations benefits have been paid. . . ." Moreover,Shelby Mutual, at 634-639, recognizes that there is no distinction between the term "basic" and added" reparations benefits. Accordingly, the court finds without merit the claimant's assertion that the deduction from his underinsured award is limited to $25,000.00.
Dugas v. Lumberman's Mutual Casualty Company, 217 Conn. 631, 633, n. 1 (1991), holds that when an insurer obtains recovery of its no-fault lien from the payment made by the tortfeasor (rather than waiting for a reduction in its UIM obligations), the insurer is entitled to repayment of only two-thirds of the lien pursuant to Conn. General Statute § 38a-369. The remaining one-third is deducted from the lien as a reimbursement for attorney's fees incurred in collecting funds from the tortfeasor. Dugas,
at 647.
In the instant case, there does not appear to be any evidence that the insurance company sought reimbursement for the basic reparations benefits which it paid from the $100,000.00 recovery from the tortfeasor. There is evidence that the claimant, through his attorney, offered $3,333.00, apparently from the tortfeasor recovery, as reimbursement. It is not entirely clear to this court how that figure was arrived at. It is logical to recognize that mathematically the money offered is two-thirds of the statutorily mandated $5,000.00 basic reparations benefits. While the court recognizes that the claimant has claimed that the basic reparations benefits payback is limited to $25,000.00, the court does not agree with this claim. The court is unable to identify any argument, other than accord and satisfaction, which would support an obligation on the part of the claimant to pay back only $5,000.00, or $5,000.00 less the attorney's fee.
The court concludes that the insurance company's demand for payback was a demand in accordance with both the regulation and the language of the policy to deduct its $100,000.00 basic reparations benefits payment from its obligation under its underinsured motorist coverage. Since the $100,000.00 payback was a reduction in the underinsured motorist coverage and not a payback from the tortfeasor recovery, the court finds that the insurer was entitled to full reimbursement without deducting attorney's fee,Koskoff, Koskoff and Bieder v. Allstate Insurance, 187 Conn. 451 (1981), and further finds that a claimant is not entitled to a contribution from the insured towards attorney's fees from the amount of reparations benefits reimbursed to the insurer in an underinsured motorist claim.Dugas v. Lumberman's Mutual Casualty Co., 217 Conn. 631 (1991).
Summarizing its decision in both the stacking case, #CV 95-0381407-S and this case, #CV 95-0381367-S, the court finds as follows: CT Page 1353-P
Available underinsured coverage $ 2,000,000.00
Damages sustained by Panza, Jr. $ 1,550,000.00
 Credit for payments by tortfeasor's insurer $ 100,000.00
 Credit for basic reparations benefits paid $ 96,667.00 ($100,000.00 less $3,333.00)
Net claimant's entitlement $ 1,353,333.00
The effect of this court's decision in #CV 95-0381407-S and this case is to affirm the decision of the arbitration panel without modification in favor of either party.
THE COURT
BY __________________ KEVIN E. BOOTH. JUDGE