[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs George A. Athanson and Joseph A. Ciaffaglione appeal a decision of the defendant Statewide Grievance Committee (Committee) reprimanding the plaintiffs, based on a complaint filed by Angela I. Salvari. The Committee acted pursuant to Practice Book 27J and 27M and General Statutes 51-90g and51-90h. The appeal is brought pursuant to Practice Book 27N. See also Pinsky v. Statewide Grievance Committee, 216 Conn. 228,232-34 (1990). Practice Book 27N was adopted subsequent to the Pinsky decision.
The court finds in favor of the defendant Committee insofar as its decision concerns plaintiff Athanson and in favor of the plaintiffs with respect to the Committee's decision affecting plaintiff Ciaffaglione.
The following facts are essentially undisputed. Salvari CT Page 1900 retained the Law Office of George A. Athanson to represent her in a personal injury claim arising out of an automobile accident that occurred on July 13, 1989. Athanson and Salvari agreed to a contingency fee to handle the matter. Salvari's lawsuit was settled in August 1990, and the settlement proceeds were disbursed at that time.
In a letter dated September 14, 1990, Athanson sent Salvari a written statement of the disbursements for her claim. The settlement amount is stated as $13,000.00, although Athanson noted that another $600.00 was expected. Athanson presents the following "breakdown" of the settlement:
 $ 4,333.00 — GAA One-third (1/3) of $13,000.00 $ 4,755.95 — Aetna — subrogation amount $ 205.00 — Connecticut Diagnostic Rehabilitation $ 65.00 — GAA — miscellaneous expenses $ 628.00 — Enfield Chiropractic Health Sports Care $ 150.00 — Jody S. Rosetti, D.M.D. $ 250.00 — Sinai Imaging Associates $ 400.00 — Cost for medical reports ----------- $10,786.95
 $13,000.00 — Settlement Amount $10,786.95 — Attorney's fees, expenses, medical bills, ---------- medical reports, etc. $ 2,213.05 — To Angela
The $4,755.95 "Aetna subrogation amount" is the total amount of basic reparations benefits (BRB) paid by Aetna under Salvari's no-fault policy. In a letter and check to Aetna, both also dated September 14, 1990, Athanson reimbursed Aetna $3,170.95 of the $4,755.95 "subrogation amount." In his letter to Aetna, Athanson states that his office "kept" $1,585.00, or one-third of $4,755.95 for "protecting Aetna's subrogation interest." In summary, Athanson deducted a contingency fee of one-third of the settlement proceeds ($4,333.00) plus the total amount of basic reparations benefits paid by Aetna ($4,755.95) from the $13,000.00 settlement. He listed the latter deduction as an amount fully payable to Aetna as the "subrogation amount," when in fact one-third of that amount was kept by Athanson's office as an additional attorney fee for "protecting Aetna's subrogation interest." CT Page 1901
Unhappy with the above accounting, Salvari consulted Attorney Donald Crowley. Following the intervention of Crowley, Athanson agreed to reduce his basic fee from one-third to one-fourth of the settlement proceeds, which Salvari claimed was the percentage they had originally agreed on. In a letter dated October 23, 1990, Athanson explained to Salvari that for the purposes of resolving the matter in an amicable way, he would reduce his fee from one-third of $13,000.00 to one-fourth of the final settlement amount, which had increased to $13,600.00. He, therefore, enclosed a check to Salvari for the difference, $933.00. Even after this revision, however, the total amount retained as fees by Athanson, including the portion of the BRB, exceeded one-third of the settlement amount.
By letter dated January 10, 1991, Salvari informed Athanson that she believed he still owed her $1,551.95 of the $4,755.95 deducted from the settlement to pay Aetna. She stated: "Before I signed the release you must have known then you only had to send Aetna 2/3. After you got the money you double charged me on your accounting sheet." Athanson did not send Salvari the $1,551.95, and she filed the grievance complaint that is the basis of this case.
The grievance procedure led to a hearing before a reviewing committee of the defendant Statewide Grievance Committee. Following the hearing, the reviewing committee issued a "proposed decision" recommending dismissal of the plaintiff's complaint. The Committee, however, after reviewing the record, rejected the reviewing committee's recommendation and issued the following decision finding the plaintiffs culpable:
 The Committee concluded that there was clear and convincing evidence that the Respondent[s] in the September 14, 1990 statement to the Complainant violated Rule 1.5 of the Rules of Professional Conduct by deducting a one-third fee from the settlement proceeds and an additional one-third from the basic reparations benefits reimbursement so as to claim in excess of one-third of the settlement as a fee, contrary to Connecticut General Statutes 52-251(c). The Respondent[s] also charged an unreasonable fee in violation of Rule 1.5 by retaining sums rightfully the client's under Connecticut General Statutes 38-325(b) (presently 38a-369). Additionally the Respondent[s] violated Rule 1.4 by failing to inform the Complainant CT Page 1902 of the fee being taken from the basic reparations benefits reimbursement.
In their brief, the plaintiffs present three arguments in support of their claim that the discipline imposed by the Committee was improper:
 1. Attorney Ciaffaglione is a subordinate lawyer in the firm, and is not responsible for the fee arrangements made by the law firm.
 2. Attorney Athanson and Attorney Ciaffaglione were reprimanded for conduct which was common in the legal community at that time. Said reprimands were in violation of state law.
 3. Given the confusion over the proper fees for this type of case, Attorney Athanson and Attorney Ciaffaglione should not be reprimanded. Restitution is the proper remedy.
The plaintiffs apparently concede that if the Committee's factual findings and legal conclusions concerning the proper interpretation of the relevant law are correct, they do establish a violation of Rules 1.4 and 1.5.
An appeal from a decision of the Committee to reprimand an attorney is limited to a review of the record and is not a de novo proceeding. Pinsky, supra, 234. Practice Book 27N(f) provides:
 (f) Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of CT Page 1903 discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the statewide grievance committee or take such other actions as may be necessary. For purposes of further appeal, the action taken by the superior court hereunder is a final judgment.
Although an appeal of a decision of the Committee is not governed by the specific provisions of the Uniform Administrative Procedure Act, General Statutes 4-166 et seq.; Sobocinski v. Statewide Grievance Committee, 215 Conn. 517,525-26 (1990); the above practice book provisions are so similar to the provisions of General Statutes 4-183 of the UAPA that many of the same principles of law apply to appeals of the Committee's decisions.
Appeals from a reprimand are "limited to a review of the record to determine if the facts found are supported by the evidence contained in the record and whether the conclusions that follow are legally and logically correct." Pinsky, supra, 234 (citing appeals from administrative agencies under the UAPA).
The standard of proof applicable to the Committee in determining whether an attorney has violated the Rules is clear and convincing evidence. Statewide Grievance Committee v. Presnick, 18 Conn. App. 475, 477 (1989). This standard applies to disciplining lawyers, regardless of the ultimate sanction imposed. Statewide Grievance Committee v. Presnick, 18 Conn. App. 316,323 (1989). Thus, the evidence in the record must support the finding of an ethical violation by clear and convincing evidence for this court to uphold the Committee's decision.
Two statutes are of particular importance in addressing the plaintiffs' claims. General Statutes 52-251c reads, in relevant part, as follows:
 (a) In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property . . ., the attorney and the claimant may provide by contract . . ., that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) damages awarded and received by the claimant; or (2) settlement amount CT Page 1904 pursuant to a settlement agreement.
 (b) In any such contingency fee arrangement such fee shall be the exclusive method for payment of the attorney by the claimant and shall not exceed an amount equal to a percentage of the damages awarded and received by the claimant or of the settlement amount received by the claimant as follows: (1) Thirty-three and one-third per cent of the first three hundred thousand dollars . . . .
 (c) For the purpose of this section, . . . "settlement amount received" means in a claim or civil action in which no final judgment is entered, the amount received by the claimant pursuant to a settlement agreement . . . . (Emphasis added.)
Public Act 91-380, 1 amended the relevant portion of subsection (c) as follows:
 (c) For the purpose of this section . . . "settlement amount received" means in a claim or civil action in which no final judgment is entered, the amount received by the claimant pursuant to a settlement agreement, EXCEPT THAT IN A CLAIM OR CIVIL ACTION BROUGHT PURSUANT TO SECTION 38a-368 SUCH AMOUNT SHALL BE REDUCED BY ANY BASIC REPARATIONS BENEFITS PAID TO THE CLAIMANT PURSUANT TO SECTION 38a-365 . . . .
Conn. Pub. Acts No. 91-380, 1 (January Sess. 1991). Public Act 91-380 was not effective until October 1, 1991, long after Salvari's grievance was filed and after the hearing before the reviewing committee. While the amendment does not apply to this case, the parties have cited to it in their arguments concerning the proper interpretation of 52-251c prior to the amendment and of 38a-369.
The second statute, 38a-369 (formerly 38-325), sets out the procedure to be followed in reimbursing basic reparations benefits to the insurer from the proceeds of a judgment or settlement against a third party. It provides, in relevant part, as follows:
 (b) Whenever a person who receives basic reparations benefits for an injury recovers damages, either by judgment CT Page 1905 or settlement . . ., the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid, minus an amount which represents the insurer's contribution toward attorney's fees for the collection of basic reparations benefits. Such amounts shall be computed by multiplying the total amount of such reasonable attorney's fees and costs, by a fraction, the numerator of which shall be the amount of damages recovered by the claimant, less court costs. In no event shall such amount exceed one-third the amount of the basic reparations benefits to be reimbursed to the insurer. The insurer shall have a lien on the claimant's recovery for the amount to which he is entitled for such reimbursement; provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant.
The plaintiffs' essential argument in justification of Athanson's retention of one-third of the BRB and his failure to disclose that to the client is "the theory that he was entitled to two fees in the Salvari case: one related to the settlement of the entire case, calculated pursuant to 52-251c, and the second for protecting the insurer's subrogation rights, calculated pursuant to 38a-369." Plaintiffs' Brief, p. 12. The one-third of the BRB was the result of a "separate transaction between the insurer and Attorney Athanson" for recovery of the subrogation amount from the tortfeasor. Id.
The plaintiffs further argue that in August 1990, the time of the disbursement, there were differences of opinion within the legal community concerning who was entitled to the one-third attorney fee portion of the BRB.
The starting point for resolving these issues is the proper interpretation of the relevant statutes as they were framed in August 1990. "[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. In re Valerie D., 223 Conn. 492, 512, 613 A.2d 748
(1992). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . . ." CT Page 1906
State v. McVeigh, 224 Conn. 593, 607 (1993), quoting Lauer v. Zoning Commission, 220 Conn. 455, 460 (1991). (Internal quotation marks omitted.)
In 1980, the legislature enacted Public Act 80-131, which amended 38-325(b), now 38a-369(b), by adding the current formula for determining reimbursement of the BRB to the insurer. The statute as amended provides that the insurer is entitled to reimbursement of the BRB minus an amount which is the "insurer's contribution toward attorney's fees for the collection of (the BRB)." The plain meaning of this statutory language is that the insurer is required to contribute one-third of its reimbursement to help pay the insured's attorney fees. Any other interpretation would render the term "contribution" meaningless. Such an interpretation would violate elementary rules of statutory construction. Verrastro v. Sivertsen, 188 Conn. 213,221 (1982). This interpretation of 38-369(b), based on the plain words employed by the legislature, specifically awards the one-third share of the insurer's reimbursement to the insured, not to the attorney.
The legislative history of 38a-369, in particular Public Act 80-131, supports the Committee's interpretation of the statute as outlined above. Thus, Senator Murphy remarked as follows:
 [W]hen there's been a no-fault recovery and the insurance company is to be reimbursed, whatever expenses or costs have been incurred by the insured in recovering whatever sum of money is recovered by the insured, that the insurance company will pay a proportionate share of the expenses in relation to the amount of money its seeking to be reimbursed.
. . .
 It really doesn't mean anymore money for the attorneys. It really means more money for the insured. The bill as amended indicates that whatever the agreement is to pay the attorney that the same rate of pay-off goes to the insurance company, and it really means that as is indicated in the analysis of the bill if there's a $15,000.00 recovery and $5,000.00 no-fault reimbursement, that the insurance company will pay its portion of the attorney's fee of the $5,000 it recovers, and the extra CT Page 1907 money goes to the insured. . . . [I]f an insured or a member of the public is to make payments and bring upon him or herself to incur costs in order to affect a recovery, that an insurance company which benefits from affecting this recovery, should participate in the expenses . . . .
23 S. Prac., Pt. 4, 1980 Sess., pp. 1268, 1270 (emphasis added). Similarly, Senator Barry spoke in favor of the bill, saying that it was not "a lawyer's bill." Id., 1270. He also stated:
 There's no reason in the world why anybody should have to develop a case and have to work and recover a verdict for an insurance company without them sharing in the burden of the cost. And that's all it is and this is a bill that's going to inure to the benefit of the consumers, the plaintiffs of this state, but not to the attorneys who are going to be paid at whatever rate they set to begin with on the original gross settlement . . . .
Id., 1272.
During the House proceedings on the bill, Representative Tulisano stated:
 [T]he basic reparation benefit whether or not it comes from either a settlement or a law suit of the matter would be applied to this that the claimant would have, in effect, reimbursed to them that amount of money it costs them to bring an action to recover against a third party.
23 H. Proc., Pt. 12, 1980 Sess., p. 3632 (emphasis added). See also Jt. Comm. on Judiciary, Hearing, Part II, 1980, pp. 341-45, 416-20.
These excerpts clearly indicate the legislature's intent that the insured retain the one-third portion of the BRB as a contribution to the insured's attorney's fee.
Appellate court decisions also confirm the Committee's interpretation of the statute that the one-third deduction of the BRB reimbursement belongs to the insured, not the attorney. In Dugas v. Lumbermens Mutual Casualty Co., 22 Conn. App. 27, CT Page 190834-35 (1990); reversed on other grounds, 217 Conn. 631 (1991), the Appellate Court stated that "[i]n 1980, the legislature, growing increasingly aware that 38-325(b) placed an unfair burden on insureds and granted insurers a windfall . . . amended the statute to require insurers to make a pro rata contribution toward the expenses borne by the insured in procuring the recovery." (Emphasis added.) The court stated further that 38a-369 provides for reducing the insurer's reimbursement "as a contribution toward the claimant's attorney's fees to reflect the claimant's cost of procuring the benefit for the carrier." Id., 32 (emphasis added.)
Although the Supreme Court reversed the Appellate Court in Dugas on other grounds, it did hold, with respect to the issue under review here, that
 In 1980, the legislature amended 38-325(b) to allow insureds to reduce the amount of the reimbursement by an amount reflecting the insurer's contribution to the attorney's fees expended by the insured in obtaining the damage award. See Public Acts 1980, No. 80-131.
217 Conn. at 637 (emphasis added).
The plaintiffs' argument that they are entitled to retain the one-third BRB as a separate attorney's fee due from the insurer was specifically rejected by the Supreme Court in Koskoff, Koskoff Bieder v. Allstate Ins. Co., 187 Conn. 451
(1982). The issue in Koskoff was whether the defendant insurer was entitled to full reimbursement of the BRB, with no deduction for attorney's fees, or whether the insureds were entitled to an amount representing attorney's fees from the BRB. The court first concluded that Public Act 80-131, which specifically provided for such a deduction, was not retroactively applicable to the case. Id., 456-57. It then rejected the plaintiff's claim that attorney's fees should be deducted from the amount reimbursed on the equitable ground of quantum meruit. "[T]he [insurer] by sending notice of the lien to the plaintiff and the plaintiff's counsel was not impliedly contracting for the services of the [attorney] but rather was merely advising the [insured] of its right to reimbursement." Id., 457 (citation omitted).
Applying the rule of Koskoff to the present case means that CT Page 1909 the Aetna's notice of its lien on the BRB amount did not create an attorney-client relationship which would justify the second fee claimed by Athanson. Nor is there any other evidence pointing to such a relationship between Athanson and the Aetna.
The plain language of 38a-369, its legislative history, and the decision of the Appellate and Supreme Courts in Dugas and Koskoff conclusively affirm the Committee's interpretation of the statute as applied in August-September, 1990. There is no support in the law for the contrary interpretation that Athanson followed when he disbursed the funds to his client. In this regard, it is highly significant that the Dugas and Koskoff decisions had been issued and published prior to the disbursement. Nevertheless, the plaintiffs argue that the law was in a state of confusion at that time and that, therefore, they should not be penalized for having pursued the wrong theory. They point to three circumstances which they claim support their "confusion" argument. These are (1) the enactment of Public Act 91-380; (2) an opinion of the Connecticut Attorney General dated April 11, 1991; and (3) a letter dated January 3, 1991, to the Attorney General from William F. Gallagher of the Connecticut Trial Lawyers Association. The court has examined these materials and concludes that they provide little support for the plaintiffs' position.
Public Act 91-380 amended General Statutes 52-251c(c) to provide that the full amount of the BRB is deducted from the amount of the claimant's damages before calculating the permissible attorney's fee. The Act's primary effect is to reduce the attorney's fee by reducing the amount to which the percentage contingency fee is applied. The Act does not affect the amount reimbursed to the insurer under 38a-369. During the proceedings in the House of Representatives, however, Representative Tulisano stated that one purpose of the Act was to clear up a misunderstanding of 38a-369.
 [A] number of years ago when we did the legislation dealing with no-fault, we had made it clear that the client or the consumer should get the benefit of reimbursement law. It seems that there have been some folks who have either misinterpreted or avoided the original intent of the law. This makes it clear that an attorney cannot get paid twice on an area.
34 H. Proc., Pt. 29, 1991 Sess., pp. 10, 880-81. CT Page 1910
Contrary to the plaintiffs' argument, the plain language of P.A. 91-380 and its legislative history do not indicate that there was good faith division of opinion as to the proper interpretation of the law prior to that Act.
The court also is not persuaded that the Gallagher letter and the Attorney General's opinion excuse Athanson from correctly interpreting the requirements of 38a-369. In his opinion, the Attorney General stated: "Based upon the Court's discussion of the public policy underlying Conn. Gen. Stat. 38-325(b), we conclude that a lawyer may not deduct an attorney's fee from the total recovery and deduct another fee from the BRB amount reimbursed to the insurance company. Otherwise, the public policy of Section 38-325(b), requiring the insurance company to contribute to the insured's cost of recovering the BRB, would be violated. The unfair burden of paying the cost of recovering the BRB would remain upon the insured. The windfall granted to insurers under Section 38-325(b) prior to 1980 would become a windfall to attorneys."
The opinion specifically relied on the Appellate and Supreme Court decisions in Dugas and Koskoff, supra, and the legislative history of 38a-369. As indicated, all of this material was fully available to Athanson prior to the time he retained the illegal fee in this case. The mere fact that the Attorney General later rendered a confirming opinion hardly supports the plaintiffs' claim of good faith "confusion."
In this court's view, the most significant defect in the plaintiffs' good faith argument is the fact that Athanson interpreted the statute so that he would benefit financially, at the expense of his client, and then falsely advised his client on that subject. When he wrote to his client to explain the disbursement of her settlement amount, Athanson did not simply fail to disclose that he was retaining one-third of the BRB; rather, he deliberately concealed his retention of her money by falsely stating that it was being paid to the Aetna.
For all of the above reasons, the court concludes that the Committee did not err in finding by clear and convincing evidence that Athanson charged an excessive and unreasonable fee in violation of Rule 1.5 and failed to inform his client as required by Rule 1.4. CT Page 1911
A different issue is presented by the case of attorney Ciaffaglione. It is undisputed that at all relevant times Ciaffaglione was employed as an associate attorney in Athanson's office. Evidence in the record indicates that the client, Salvari, initially sought advice on her case from Athanson, but Ciaffaglione handled the case to its ultimate settlement. At that point, Athanson took over and disbursed the funds as related above. When Salvari called Ciaffaglione to complain, he replied that he did not handle the financial aspect and that "Athanson has got the case now." There is no evidence that Ciaffaglione negotiated fees or participated in determining the policy of retaining one-third of the BRB as a second fee. The Committee concedes that Athanson and Salvari determined the fee arrangement. The record shows that Athanson communicated with Aetna about the BRB reimbursement and that Athanson wrote the check to Aetna for two-thirds of the BRB.
The facts summarized above do not support a finding by clear and convincing evidence that Ciaffaglione personally violated Rules 1.5 and 1.4. All of the acts constituting the violation of those rules were done by Athanson. As Athanson's employee, a "subordinate lawyer" in the words of Rule 5.2, Ciaffaglione was powerless in the relationship between Athanson and the client. Pursuant to Rule 5.2, concerning the responsibility of a subordinate lawyer, "(a) lawyer is bound by the rules of professional conduct notwithstanding that that lawyer acted at the direction of another person." In this case, Ciaffaglione, the subordinate lawyer, did not even do any of the acts which violated the rules. He cannot be held responsible, therefore, either directly under Rules 1.5 and 1.4 or indirectly under Rule 5.2.
Athanson's final argument is that the reprimand was an inappropriate sanction. He asserts that in light of his good faith interpretation of the law and his willingness to defer to the Committee's interpretation of the relevant statutes, restitution, not discipline, is the proper remedy. He cites no authority for this position, and the court concludes there is no basis for it. At the time the Committee issued the reprimand in this case, the Committee did not have the power to order restitution. See Conn. Practice Bk. 27M (Rev. to 1991). Practice Book 27M and 27M.1, effective October 1, 1992, now authorize the Committee to impose "sanctions and conditions" such as restitution. Conn. Practice Bk. 27M.1(2). Thus restitution was never available as a sanction in this case. CT Page 1912
The appeal is sustained as to Attorney Ciaffaglione, and it is dismissed as to Attorney Athanson.
Maloney, J.